UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK WADE CARLON,<br><br>      Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendants. | Case No. 1:21-cv-01484-EPG<br><br>FINAL JUDGMENT AND ORDER<br>REGARDING PLAINTIFF'S SOCIAL<br>SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Social Security Disability Insurance benefits.[1] (ECF No. 1). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 4, 6, 7).

Plaintiff presents the following issues:

1. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction

2. Whether the ALJ provided specific and legitimate reasons for discounting the treating medical source opinion of Gabriel Garcia-Diaz, M.D.

---

[1] The Court notes that Plaintiff alleges disability since June 15, 2013. However, Plaintiff is required to establish disability prior to the date last insured, December 31, 2013. *See* A.R. 514-15.

1

3. Whether the ALJ erred in finding that Plaintiff's left upper extremity impairment was non-severe and omitting greater reaching and manipulative limitations

(ECF No. 10, p. 7).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

I.    **ANALYSIS**

**A. Plaintiff's allegations of pain and physical dysfunction**

Plaintiff first argues that the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's allegations of "lower back and neck pain, radicular symptoms of numbness and weakness, drowsiness from his medications, fatigue, and left upper extremity dysfunction." (ECF No. 10, p. 7). Specifically, Plaintiff argues that, had the ALJ properly credited his subjective complaints regarding these symptoms, Plaintiff would be precluded from gainful work. (*Id.* at 12).

In terms of evaluating a Plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective complaints "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 518).

2

1  Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the

2  Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial

3  evidence, for not giving full weight to Plaintiff's symptom testimony.

4      The ALJ summarized Plaintiff's complaints and daily activities as follows:

5  > The claimant testified that in 2013 he lived with his wife and children. He said he
   > was doing all of his own yard work prior to 2009, but at that time he had to stop.

6  > He used to jog, but he stopped sometime in 2012 or 2013 because of difficulty
   > with his legs. He used to go jogging for an hour, but he has not jogged since June

7  > 2013. He was and is able to drive a car, but he would have been unable to drive
   > from Los Gatos to Modesto without stopping.

8

9  > The claimant said [he] stopped working in 2009 because he was laid off because of
   > the financial crisis at that time. He continued looking for work until his back pain

10 > bothered him too much. He has never used an assistive device to walk. However,
   > he said he has had horrible back pain since sixth grade and at times during his

11 > whole life he has had to lie down for 15 to 20 minutes until he can get up. He said
   > during the period from June of 2013 through December of 2013, he was in horrible

12 > pain every day. After his surgery, he felt a pain as if he was being electrocuted. He
   > said when he started taking testosterone, it helped to strengthen his muscles, but he

13 > still felt pain in his legs. During the period at issue, he said he would lie down for
   > two to three hours a day, and could not lift anything. He could not be on his feet

14 > for more than a half hour, sitting bothered his back and his medication made him
   > sleepy, constipated, and with difficulty staying on task. He had no energy and he

15 > had problems with his left elbow and shoulder. He said he had trouble holding
   > onto things, dropping things, and with numbness in his hand.

16

17 (A.R. 518). The ALJ then stated that:

18 > After careful consideration of the evidence, I find that the claimant's medically
   > determinable impairments could reasonably be expected to cause the alleged

19 > symptoms; however, the claimant's statements concerning the intensity,
   > persistence and limiting effects of these symptoms are not entirely consistent with

20 > the medical evidence and other evidence in the record for the reasons explained in
   > this decision.

21 > As for the claimant's statements about the intensity, persistence, and limiting
   > effects of his or her symptoms, they are inconsistent because while the claimant

22 > alleges that from June of 2013 through December of 2013, he was lying down

23 > throughout the day, unable to hold things, and was incapacitated by pain; treatment
   > records indicate movement around the exam room without evident pain, no

24 > difficulty getting in and out of a chair, normal gait, normal heel and toe walking,
   > and normal general strength (Exhibits 4F, pp. 24, 33, 42; 10F, p. 3; 20F, p. 20;

25 > 26F, pp. 5, 14, 22, 32). Treatment records indicated that post back surgery, the
   > claimant was doing well until January or February of 2014 when he noticed

26 > bilateral upper extremity and left lower extremity numbness after a car ride from
   > Los Gatos to Modesto, which cleared up after 30 minutes (Exhibit 20F, p. 8).

27

28 (A.R. 518-19). In support of this determination, the ALJ discussed Plaintiff's medical history,

specifically citing to the relevant examination findings and treatment notes:

The claimant underwent an orthopedic examination by Gabriel Garcia-Diaz, M.D. in June of 2013 (Exhibit 4F, pp. 4-10). The claimant reported a diagnosis of spina bifida occulta 27 years earlier with worsening of his symptoms in 2009 (Exhibit 4F, p. 4). He was taking aspirin, and had previous epidural injections and physical therapy (Exhibit 4F, pp. 4, 5). The claimant moved around the exam room without evident pain, he had a normal gait, and he was 72 inches and weighed 189 pounds (Exhibit 4F, p. 7). Examination of the cervical and thoracic spine was unremarkable (Exhibit 4F, pp. 7, 8). There was tenderness to palpation at L3, L5, and L6, but range of motion was normal, straight leg raises were normal, and other tests were negative (Exhibit 4F, p. 8). Examination of the extremities was unremarkable (Exhibit 4F, p. 8). Motor strength and sensation were normal, and deep tendon reflexes were bilaterally negative (Exhibit 4F, p. 8). Dr. Garcia-Diaz noted lumbar spine x-rays that indicated a congenital abnormality or variation in the 6th lumbar vertebrae and spina bifida occulta (Exhibit 4F, p. 9). He recommended activity modification, limited bedrest with gradual resumption of normal activities, serial clinical and radiographic observation, home stretching, core strengthening, flexibility exercises, aerobic exercise as tolerated, ice packs, medications, modalities, and patient directed self-care (Exhibit 4F, p. 9)

An MRI of the lumbar spine on July 3, 2013 showed transitional lumbosacral vertebrae, and a broad based protrusion present at L5-S1 with a superimposed small paracentral disc extrusion with possible free fragment formation with mild pass effect of the left S1 nerve root (Exhibit 4F, p. 12).

Upon follow-up with Dr. Garcia-Diaz, he recommended transforaminal epidural corticosteroid injections at L4-5 on the left (Exhibit 4F, p. 19). He also prescribed Neurontin 300mg (Exhibit 4F, p. 20). X-rays of the pelvis and hip indicated no significant abnormalities (Exhibit 4F, p. 26). In August of 2013, Dr. Garcia-Diaz recommended a lumbar-sacral orthosis and surgery, as the claimant had achieved maximum benefit from conservative care and further non-operative care would only serve to manage and not relieve symptoms (Exhibit 4F, pp. 27, 28).

Dr. Garcia-Diaz performed a left L4-5 laminectomy with decompression and microdiscectomy on September 18, 2013 (Exhibits 2F, p. 11; 4F, p. 46). Upon follow-up on October 1, 2013, the claimant reported a new problem of left foot numbness without pain (Exhibit 4F, p. 38). However, the claimant's other symptoms had markedly improved since the last visit (Exhibit 4F, pp. 38, 39). Dr. Garcia-Diaz provided free office samples of Celebrex and Lyrica (Exhibit 4F, p. 44).

On October 31, 2013, the claimant exhibited a normal gait, normal strength, full pain free range of motion of the cervical spine, tenderness to palpation at L3, L5, and L6, negative straight leg raises, and tenderness in the left posterior superior iliac spine (exhibit 26F, p. 6). Waddel's signs were negative, and there were no significant neurological findings in the upper or lower extremities (Exhibit 26F, p. 6). Motor strength and sensation were normal, reflexes were 1-2+ and symmetric, and there was no muscle atrophy (Exhibit 26F, p. 6).

In December of 2013, examination results were similar to the prior exam in

October (Exhibit 26F, p. 14). Dr. Diaz-Garcia recommended the claimant pursue an appropriate home exercise program as tolerated, including stretches, strengthening, and flexibility exercises, as well as aerobic exercise program (Exhibit 26F, p. 16). At the four-week follow-up in January of 2014, Dr. Diaz-Garcia noted the claimant's was grossly unchanged from the prior visit (Exhibit 26F, p. 22). The claimant's medications included Celebrex and Tramadol (Exhibit 26F, p. 26). In later January, the claimant's symptoms had gotten somewhat better and he reported a 30 percent improvement since the last visit (Exhibits 26F, p. 28; 33F).

(A.R. 520-21). After extensively summarizing the medical evidence of record, the ALJ concluded:

While the claimant was experiencing pain and some radicular symptoms, he continued to have full motor strength of his extremities, no atrophy, a normal gait, negative straight leg raises. The record notes the claimant had improved symptoms after surgery, and although he developed some additional symptoms in the lower extremities, he has never needed an assistive device for ambulation. The presence of cervical radiculopathy supports limits on reaching, pushing, and pulling, his back pain supports postural limitations, his use of medication supports environmental limits, and his lower extremity symptoms support limits on standing and walking.

(A.R. 526).

First, the ALJ found that Plaintiff's statements regarding his symptoms and limitations were inconsistent with numerous objective medical findings. (A.R. 518). Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is relevant factor for the ALJ to consider. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Here, the ALJ cited to multiple examination findings noting normal movement without evident pain, normal gait, normal general strength, and normal motor strength in all major muscle groups. (*See e.g.* A.R. 519 (citing to 347 (examination findings from August 2013), 356 (examination findings from September 2013), 365 (examination findings from early October 2013), 1101 (examination findings from post-surgery follow up visit in late October 2013), 1110 (examination findings from December 2013), 1118 (examination findings from early January 2014), 1128 (examination findings from late January 2014), 407 (examination findings from October 2014 indicating "motor strength 5/5

in upper and lower extremities bilaterally" and "gait steady and narrow based. . .able to do heel-to-toe tandem walking without any evidence of ataxia")).  The ALJ specifically found that these examination findings did not corroborate to Plaintiff's allegations that during the relevant period "he was lying down throughout the day, unable to hold things, and was incapacitated by pain."

Moreover, the ALJ properly considered Plaintiff's reports to medical providers that suggest Plaintiff's symptoms improved after surgery. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (an ALJ may consider inconsistent statements by a claimant in evaluating the claimant's testimony). Here, the ALJ specifically cited to treatment history notes that indicated that Plaintiff was "doing well" following his back surgery:

> In June 2013 the patient experienced his first episode of severe low back pain, which was associated with BLE weakness. The patient experienced several similar episodes before presenting to Neurosurgery, at which time he was diagnosed with L4-5 radiculopathy & subsequently underwent surgical decompression. Upon awakening from surgery, the patient noted distal LLE numbness from the knee down, which has persisted since that time, however, the patient experiences significant improvement in his functional status, as well as significant improvement in his low back pain. The patient was doing relatively well until Jan/Feb 2014 when he experienced an episode of sudden-onset BUE & LLE numbness after a car-ride from Los Gatos to Modesto. The patient described numbness that involved the entirety of the three aforementioned extremities & resolved spontaneously within a period of < 30 min.

(*See* A.R. 519 (citing to 441)).

Thus, the ALJ did not solely discount Plaintiff's testimony based on a lack of supporting medical evidence. Nor did the ALJ merely summarize the medical evidence. Instead, the ALJ's decision reasoned that Plaintiff's testimony was inconsistent with Plaintiff's reported improvement after surgery. Further, the medical records, which generally report good recovery and symptom improvement, were inconsistent with the extent of Plaintiff's complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility).

Plaintiff argues that Dr. Garcia-Diaz's treatment notes from October and December 2013 indicate that Plaintiff's symptoms "did not significantly improve following surgery." Plaintiff also argues that MRI results and electrodiagnostic studies corroborate Plaintiff's testimony as to the severity and level of dysfunction experienced by Plaintiff. While Plaintiff points to a different

interpretation of the record, namely that his symptoms were more severe than the ALJ found,
Plaintiff's arguments, at most, present another "rational interpretation" of the record, which
means that "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676,
678 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ provided legally sufficient reasons for not
giving full weight to Plaintiff's testimony regarding the severity of his symptoms.

**B.     Dr. Garcia-Diaz's medical opinion**

Plaintiff also argues that the ALJ erred in weighing the medical opinion of Plaintiff's
treating physician, Dr. Gabriel Garcia-Diaz. (ECF No. 10, p. 13).

In this circuit, courts distinguish the opinions of three categories of physicians: (1) treating
physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-
examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821,
830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest
weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th
Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of
non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§
404.1527(d)(2), 416.927(d)(2). The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling
> weight" so long as it "is well-supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent with the other substantial
> evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a
> treating physician's opinion is not controlling, it is weighted according to factors
> such as the length of the treatment relationship and the frequency of examination,
> the nature and extent of the treatment relationship, supportability, consistency with
> the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject
> [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state
> clear and convincing reasons that are supported by substantial evidence." *Ryan v.
> Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original)
> (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating
> or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ
> may only reject it by providing specific and legitimate reasons that are supported
> by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick
> v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a
> treating doctor's credible opinion on disability are comparable to those required for
> rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by
> setting out a detailed and thorough summary of the facts and conflicting clinical

1  evidence, stating his interpretation thereof, and making findings." *Magallanes v.*
2  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d
   1403, 1408 (9th Cir. 1986))

3  *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017).[2]

4       The Court must affirm the Commissioner's decision if it is based on proper legal

5  standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

6  405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Coleman v.*

7  *Saul,* 979 F.3d 751, 755 (9th Cir. 2020) ("Substantial evidence means more than a mere scintilla

8  but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

9  adequate to support a conclusion."). It is the ALJ's responsibility to resolve conflicts in the

10 medical evidence and ambiguities in the record. *Ford v. Saul,* 950 F.3d 1141, 1149 (9th Cir.

11 2020). Where this evidence is "susceptible to more than one rational interpretation," the ALJ's

12 reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194,

13 1998 (9th Cir. 2008).

14      Here, Dr. Garcia-Diaz's opinion was contradicted by other doctors (consultative examiner,

15 Dr. Van Kirk, and testifying medical expert, Dr. Hartsfield) and thus, the Court considers whether

16 the ALJ provided specific and legitimate reasons that are supported by substantial evidence.

17 Specifically, the ALJ gave the following reasons for assigning "little weight" to Dr. Garcia-Diaz's
   opinion:

18       Gabrial Garcia-Diaz, MD completed a physical residual functional capacity
19       questionnaire dated March of 2020 (Exhibit 37F, pp. 1-4). He indicated diagnoses
         of degenerative disc disease of L2- S1, severe left L5-S1 radiculopathy, and
20       moderate right lumbar spine denervation with symptoms including pain with
         radicular symptoms in the bilateral lower extremities with bilateral weakness
21       (Exhibit 37F, p. 1). He opined the claimant could rarely lift up to five pounds,
         could not walk a city block without rest or severe pain, could not walk more than
22       one block on rough or uneven ground, and could not climb steps without the use of
         a handrail at a reasonable pace (Exhibit 37F, p. 2). He has problems with balance
23       when ambulating and he had problems with stooping, crouching, and bending
24       (Exhibit 37F, p. 2). The claimant would need to lie down or recline for about two
         hours in an eight-hour workday (Exhibit 37F, p. 2). He could sit for less than one
25       hour and stand and walk less than one hour in an eight-hour workday, and he
         would need unscheduled breaks three times an hour for five minutes (Exhibit 37F,
26

27 _____
   [2] The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which
28 revise the rules regarding evaluation of medical opinions. However, these revisions do not apply to Plaintiff's claim,
   which was filed in 2013.

pp. 3, 4). He required a cane for walking on all surfaces; he could not climb stairs, ladders, scaffolds, ropes, or ramps; and his pain would frequently interfere with his attention and concentration for even simple work tasks (Exhibit 37F, p. 3). His stress would frequently interfere with attention and concentration (Exhibit 37F, p. 3). He would be off task 25 percent of the workday, he would be absent from work five days or more a month, and he would be unable to complete a full workday three days per month (Exhibit 37F, p. 4). In addition, he would be 50 percent as efficient in performing a job and he was unable to retain work in a competitive work environment (Exhibit 37F, p. 4). While the record indicates that Dr. Garcia Diaz has treated the claimant for years, this form indicates he had a new patient visit on February 25, 2020 (Exhibit 37F, p. 1).

Dr. Garcia-Diaz wrote a letter on the claimant's behalf dated May 26, 2020 (Exhibit 42F, p. 1). He indicated that the claimant was a new patient in June 2013 and presented with chronic low back pain that began 27 years ago and got worse in the spring of 2009 (Exhibit 42F, p. 1). He then noted a history of spina bifida, with left leg sciatica with weakness and difficulty walking (Exhibit 42F, p. 1). He cited to a low back pain questionnaire with reports of an inability to lift or carry anything, an inability to stand for long periods, and an inability to travel or drive like he had in the past (Exhibit 42F, p. 1). He also cited to imaging from 2013 and opined that the limits indicated in the residual functional capacity questionnaire based upon evaluation in March of 2020 had remained unchanged since the claimant's first visit (Exhibit 42F, p. 1).

I give these opinions little weight. While this opinion is noted to date back to the date last insured, the overall record does not support the findings and conclusions of this provider, as it would be expected that atrophy and significant diminishment of function would be supported by the record if such limitation were actually consistent throughout the record. I note that treating records form Dr. Garcia during the period at issue indicated normal motor strength, no evident pain, and a normal gait and do not support the need for an assistive device to ambulate (Exhibits 4F; 10F; 26F). In addition, the claimant testified that he has never used an assistive device for ambulation. I find that Dr. Garcia's opinions are not consistent with or supported by the overall record, including his own treatment record.

(A.R. 524-25).

"A conflict between treatment notes and treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the specific records cited by the ALJ came from Dr. Garcia-Diaz's own 2013 treatment notes, and could reasonably be construed to contradict Dr. Garcia-Diaz's 2020 opinion regarding Plaintiff's limitations. For example, Plaintiff's normal examination findings in movement, gait, general strength, motor strength appear at odds with Dr. Garcia-Diaz's 2020 opinion that Plaintiff requires an assistive device

while standing and walking and that Plaintiff has problems with balance when ambulating. (*See e.g.*, A.R. 525 citing 324-371 (noting normal movement without evident pain, normal gait, normal general strength, and normal motor strength in all major muscle groups in 2013), 1097-1129 (treatment records noting same), 1210-11 (Dr. Garcia-Diaz's 2020 RFC assessment noting that Plaintiff has "problems with balance when ambulating" and must "use a cane, quad cane, walker, wheelchair, or other assistive device(s)). As the ALJ observed, Dr. Garcia-Diaz's 2020 opinion is also inconsistent with Plaintiff's own testimony that he does not use an assistive device. (*See* A.R. 525).

Plaintiff argues that the ALJ improperly emphasized Plaintiff's lack of muscle atrophy and significant diminishment in function as unsupported by the overall record. However, the Court notes that the ALJ's assessment of Plaintiff's limitations was based on other medical opinions. Notably, the ALJ gave "significant weight" to the opinion of medical expert, Dr. Hartfield, who reviewed Plaintiff's entire medical file and testified that "prior to January 1, 2014, the claimant was able to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for five hours, walk three hours, and stand two hours; occasionally climb stairs, and never climb ladders or scaffolds." (A.R. 524-25). The ALJ also gave "some weight" to the opinion of consultative examiner, Dr. Van Kirk, who examined Plaintiff in March 2020 and opined that Plaintiff "could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours and sit without limitation in an eight-hour workday, and could occasionally perform postural activities." (A.R. 524).

Upon review, the Court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount the opinion of Dr. Garcia-Diaz.

**C.      Whether the ALJ erred in finding that Plaintiff's left upper extremity impairment was non-severe and omitting greater reaching and manipulative limitations**

Finally, Plaintiff argues that the ALJ erred at Step Two by finding that Plaintiff's left upper extremity impairment (specifically, Plaintiff's left elbow cubital tunnel syndrome and left shoulder tendinopathy) to be non-severe prior to the date last insured, and that the resulting RFC assessment failed to reflect limitations relating to this impairment. (ECF No. 10, p. 15).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

§ 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

If a claimant has a medically determinable impairment (MDI), the ALJ must determine whether the impairment is severe, which is referred to as Step Two. 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* "Basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, remembering simple instructions, and responding appropriately to supervision. 20 C.F.R. 416.922(b).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination

of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments. *See also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005).

Here, the ALJ determined Plaintiff's RFC as follows:

After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), specifically the claimant is able to stand for about two hours out of an eight-hour day, walk for about three hours out of an eight-hour day, and sit for about five hours out of an eight-hour day. The claimant would need to change positions once every hour for one minute while remaining at the work station. The claimant is occasionally able to climb ramps and stairs, but is never able to climb ladders, ropes and scaffolds. The claimant is occasionally able to balance, stoop, and kneel, and is never able to crouch or crawl. The claimant is able to occasionally reach overhead and is able to frequently reach in other directions, bilaterally. The claimant is occasionally able to push and pull, bilaterally, and is frequently able to operate a motor vehicle. The claimant should not work in environments exposing them to unprotected heights or machinery with dangerous, moving mechanical parts, and is capable of occasional concentrated exposure to extreme cold or warm temperatures, and vibrations. The claimant can maintain frequent concentrated exposure to respiratory irritants such as gases, dust, smoke and/or fumes.

(A.R. 517).

The ALJ considered Plaintiff's upper extremity impairments in connection with Plaintiff's functional limitations as follows:

The record also indicates severe right shoulder internal derangement, left shoulder tendonopathy status post arthroscopic surgery, left elbow cubital tunnel syndrome status post release, and right elbow cubital tunnel syndrome. However, these impairments were diagnosed after the date last insured and did not cause more than minimal restriction in the claimant's ability to work during the period at issue. Nonetheless, I have considered upper extremity symptoms related to cervical radiculopathy in making this decision.

(*Id.*)

Regarding the ALJ's Step Two finding that the Plaintiff's left upper extremity impairments were non-severe during the period at issue, the Court finds that the ALJ's determination supported by substantial evidence. Here, the ALJ's decision reviewed medical

evidence prior to the date last insured, including records indicating that Plaintiff experienced numbness in his hand that was "not pressing or present" during a 2012 medical visit. (*See* A.R. 520 (citing 1160)). Further, the ALJ reviewed Plaintiff's examination findings from 2013, which noted that "physical examination of the upper extremities was basically unremarkable" with "full range of motion of major joints, no major joint instability, no swelling and no effusions." (*See e.g.*, A.R. 520 (citing 328, 331)). Thus, the Court concludes that the ALJ's Step Two finding was supported by substantial evidence.

Moreover, the ALJ considered Plaintiff's subjective complaints, medical opinions, and treatment records regarding Plaintiff's upper extremity impairments when determining Plaintiff's RFC, including medical treatment records from after the period of disability. *See* A.R. 517-518; *see also Alvarez v. Comm'r of Soc. Sec.*, 2022 WL 3108619, at *9 (E.D. Cal. Aug. 4, 2022) (noting that evidence outside of the pertinent disability period is less relevant to the question of disability). For example, the ALJ gave "some weight" to the opinion of state agency medical consultant Dr. Frye because "the overall record supports more limitation in the claimant's ability to sit, stand, walk, and perform postural and reaching activities[.]" (A.R. 524). Further, as discussed above, the ALJ also gave significant weight to the expert testimony of Dr. Hartsfield, who reviewed Plaintiff's entire medical record and testified that Plaintiff "could occasionally perform overhead reaching and occasionally push and pull." (*Id.*) Thus, even if the ALJ failed to find Plaintiff's upper extremity impairment severe at Step Two, such error would be harmless because the ALJ considered Plaintiff's upper extremity impairment when formulating the RFC and included certain reaching and pulling limitations associated with that impairment. *See Herrera v. Comm'r of Soc. Sec.*, No. 1:20-CV-01026-SAB, 2022 WL 1165830, at *6 (E.D. Cal. Apr. 20, 2022), *report and recommendation adopted*, 2022 WL 3969544 (E.D. Cal. Aug. 31, 2022) ("Even if an ALJ errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers limitations resulting from the impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless.").

Accordingly, the Court concludes that the ALJ's RFC assessment to be supported by substantial evidence.

//

1    **II.      CONCLUSION AND ORDER**

2            Based on the foregoing reasons, the decision of the Commissioner of Social Security is

3    affirmed.

4    IT IS SO ORDERED.

5

6    Dated:    __February 16, 2023__                    /s/ Erica P. Grosjean

7                                                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28